*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

GCXH, Minor, by Conservators ALICIA PATRICE
GONZALEZ and DAVID GRANT HANLIN,

        Plaintiffs-Appellants,

v

MUNSON HEALTHCARE,

        Defendant-Appellee,

and

STAT RADIOLOGY MEDICAL CORPORATION,
NORTHWESTERN MICHIGAN EMERGENCY
PHYSICIANS, PC, SOUND INPATIENT
PHYSICIANS-MICHIGAN, PLLC, HOSPITALIST
MEDICINE PHYSICIANS OF MICHIGAN, PLLC,
WILLIAM CHUNG, M.D., BRENDA SNYDER,
M.D., DOUGLAS SLATER, M.D., and KAMBRIE
Y. KATO,

        Defendants.

UNPUBLISHED
June 22, 2026
1:25 PM

No. 373603
Grand Traverse Circuit Court
LC No. 22-036356-NH

---

Before: MARIANI, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

In this medical-malpractice case, plaintiffs, Alicia Patrice Gonzalez and David Grant Hanline, as conservators for their minor son, GCXH, appeal by leave granted[1] the trial court's

---

[1] *GCXH v Munson Healthcare*, unpublished order of the Court of Appeals, entered May 12, 2025 (Docket No. 373603).

order granting partial summary disposition in favor of defendant, Munson Healthcare, under MCR 2.116(C)(10) (no genuine issue of material fact).[2] We reverse and remand for further proceedings.

## I. BACKGROUND

This case arises from alleged medical negligence in the treatment of plaintiffs' then-14-month-old son, GCXH. On the evening of May 26, 2017, plaintiff Gonzalez took GCXH to defendant's emergency department for medical care because, since the morning prior, GCXH had repeatedly vomited, was unable to keep food down, and had become increasingly lethargic and unresponsive.[3] Once GCXH was admitted as a patient for treatment, Dr. William Chung conducted several tests and examinations, which revealed that GCXH was significantly anemic and had electrolyte abnormalities, but which did not explain the root cause of GCXH's symptoms. Dr. Chung thereafter consulted with two other physicians, Dr. Douglas Slater and Dr. Brenda Snyder, for assistance in GCXH's treatment.

At approximately 1:06 a.m. the next morning, Dr. Slater ordered that GCXH undergo a CT scan of his head, which was performed in defendant's facilities. The resulting images were then transmitted to Dr. Kambrie Kato, who reviewed the images while working in her home in San Francisco, California. As Dr. Kato explained in her deposition, she worked as a teleradiologist specializing in pediatric imaging for Stat Radiology Medical Corporation ("StatRad"), which was a company that defendant had contracted with for teleradiology services. Dr. Kato was credentialed to provide those services at defendant's hospital, among others.

After reviewing the images, Dr. Kato provided a report summarizing her findings and, upon receiving the report, Dr. Slater informed plaintiff Gonzalez that the CT scan did not reveal any significant abnormalities. GCXH's condition, however, continued to worsen, and Dr. Slater eventually transferred him to Helen DeVos Children's Hospital in Grand Rapids by medical flight for elevated care. Once there, another CT scan of GCXH's head was completed, and Dr. Anthony Livorine determined from those images that there were severe abnormalities and a large blood clot in a deep cerebral vein in GCXH's brain. Due to complications from his condition, GCXH suffered significant brain damage, and he continues to suffer severe developmental delays.

In September 2022, plaintiffs filed a multi-count complaint against defendant and many of the physicians involved in GCXH's treatment. Plaintiffs alleged, as relevant here, that Dr. Kato was medically negligent for failing to properly interpret the results of GCXH's first CT scan, that her negligence delayed a proper diagnosis, and that she was therefore responsible for GCXH's injuries. Plaintiffs also alleged that defendant was vicariously liable for Dr. Kato's conduct

---

[2] Defendants Stat Radiology Medical Corporation, Northwestern Michigan Emergency Physicians, Sounds Inpatient Physicians-Michigan, Hospitalist Medicine Physicians of Michigan, Dr. William Chung, Dr. Brenda Snyder, Dr. Douglas Slater, and Dr. Kambrie Y. Kato are not parties to this appeal. Accordingly, "defendant" refers only to defendant Munson Healthcare.

[3] Plaintiff Hanlin later joined plaintiff Gonzalez and GCXH at the hospital and was present during some of GCXH's medical treatment, but according to plaintiff Gonzalez, she was the "point person" in terms of interacting with the individuals involved in GCXH's treatment.

because she was defendant's ostensible agent. In response, defendant filed an answer generally denying plaintiffs' allegations.[4]

Following discovery, defendant moved for partial summary disposition under MCR 2.116(C)(10) as to plaintiffs' claim of vicarious liability for Dr. Kato's alleged medical negligence. Defendant argued that Dr. Kato was not employed by the hospital and that nothing in the record suggested that she was its ostensible agent. According to defendant, there was no genuine issue as to whether Dr. Kato was its ostensible agent because plaintiffs were "entirely unaware of Dr. Kato's role in [GCXH's] care," given that she had reviewed the CT images from her home in San Francisco and plaintiffs had no direct interaction with her; plaintiffs therefore "could not have formed a reasonable belief that she was" defendant's agent. As evidentiary support, defendant attached to its motion, among other things, transcripts from the depositions of plaintiffs and Dr. Kato.

Plaintiffs responded that defendant's motion should be denied because there were material facts in dispute regarding ostensible agency. Plaintiffs argued that although they "did not directly 'deal with' Dr. Kato," she interpreted the CT scan ordered by Dr. Slater and completed in defendant's facilities, all of which occurred as a part of the medical treatment GCXH was receiving in defendant's emergency department. Plaintiffs further argued that they reasonably believed that Dr. Kato was defendant's agent because they "had no way of knowing that [Dr. Kato] was located off-site or was not otherwise [defendant's] employee," and no hospital personnel had told them otherwise. Because, according to plaintiffs, defendant failed to set forth any evidence that this belief had been dispelled, there was, "[a]t minimum, a genuine issue" as to the reasonableness of their belief that Dr. Kato was defendant's agent. As their own evidentiary support, plaintiffs provided, in relevant part, transcripts from the depositions of plaintiff Gonzalez and Dr. Kato, as well as Dr. Slater's consultation report and plaintiff Gonzalez's affidavit.[5]

Following a hearing on the matter, the trial court granted defendant's motion for partial summary disposition. The court concluded that, because the evidence established that Dr. Kato had worked remotely from her home in San Francisco and that neither plaintiffs nor GCXH had any contact with her during the course of treatment, there was no genuine issue of material fact that Dr. Kato was not defendant's ostensible agent.[6] This appeal followed.

## II. STANDARD OF REVIEW

We review "de novo a trial court's decision on a motion for summary disposition." *Bartalsky v Osborn*, 337 Mich App 378, 382; 977 NW2d 574 (2021). A motion for summary

---

[4] Plaintiffs filed an amended complaint in October 2024 to add several parties as defendants and to add additional claims against those parties. None of those defendants are involved in this appeal.

[5] Defendant filed a reply, in which it generally reiterated the arguments it had set forth in its motion for partial summary disposition and additionally argued that plaintiff Gonzalez's affidavit should not be considered as evidence because it conflicted with her deposition testimony.

[6] The trial court expressed skepticism about this conclusion but opined that certain unpublished authority from this Court directed it.

disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and it is "properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Cantina Enterprises II Inc v Property-Owners Ins Co*, 349 Mich App 682, 689; 28 NW3d 800 (2024). All evidence submitted by the parties must be viewed "in the light most favorable to the party opposing the motion," *id*. at 690, and "shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion," MCR 2.116(G)(6). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree." *Green v Pontiac Pub Library*, 350 Mich App 478, 493; 32 NW3d 487 (2024).

## III. DISCUSSION

On appeal, plaintiffs argue that the trial court reversibly erred by granting summary disposition in defendant's favor on their vicarious liability claim regarding Dr. Kato. According to plaintiffs, the proffered evidence established a genuine issue of material fact that Dr. Kato was defendant's ostensible agent at the time that GCXH received medical treatment, and defendant has not shown it entitled to judgment as a matter of law on the matter. We agree.

In general, "a hospital is not vicariously liable for the negligence of a physician who is an independent contractor and merely uses the hospital's facilities to render treatment to his patients." *Grewe v Mt Clemens Gen Hosp*, 404 Mich 240, 250; 273 NW2d 429 (1978). A hospital can, however, be liable for the acts of an independent contractor if he or she is shown to be an ostensible agent of the hospital. *Id*. at 250-252. To prevail under the theory of ostensible agency, a plaintiff must show that: (1) "[t]he person dealing with the agent [did] so with belief in the agent's authority and this belief must be a reasonable one;" (2) "such belief [was] generated by some act or neglect of the principal sought to be charged;" and (3) the "person relying on the agent's apparent authority [was] not . . . guilty of negligence." *Id*. at 253 (quotation marks and citations omitted). The "critical question" in determining whether ostensible agency exists "is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems." *Id*. at 251.

In *Markel v William Beaumont Hosp*, 510 Mich 1071 (2022) (*Markel II*), and again recently in *Markel v William Beaumont Hosp*, ___ Mich ___ (2025) (Docket No. 166702) (*Markel IV*), our Supreme Court reaffirmed the principles set forth in *Grewe*. In doing so, the Court clarified that under the *Grewe* test, a plaintiff has a "reasonable belief" that a doctor is the hospital's agent when the plaintiff "presents for treatment at a hospital emergency room and is treated during their hospital stay by a doctor with whom they have no prior relationship, . . . unless the hospital does something to dispel that belief." *Markel IV*, ___ Mich at ___; slip op at 1, quoting *Markel II*, 510 Mich at 1071-1072 (quotation marks and citation omitted). Accordingly, the Court concluded in *Markel IV*, ___ Mich at ___; slip op at 4, that the "plaintiff ha[d] demonstrated a genuine issue of material fact as to [the defendant hospital's] liability for medical malpractice under the theory of ostensible agency" because the "[p]laintiff presented for treatment at the hospital emergency room and was treated at the hospital by a doctor with whom she had no prior relationship," and the defendant had "not set forth facts establishing as a matter of law that it dispelled [the] plaintiff's reasonable belief that [the doctor at issue] was the hospital's agent."

Here, the evidence established that there was, at minimum, a genuine issue of material fact as to whether plaintiffs reasonably believed that Dr. Kato was defendant's agent when GCXH received medical treatment. The parties' proffered deposition testimony and documentary evidence established—and the parties do not dispute—that plaintiff Gonzalez presented to defendant's emergency department on the evening of May 26, 2017, for treatment of GCXH's symptoms. Plaintiff Gonzalez's deposition testimony also established that plaintiffs and GCXH had no preexisting relationship with the hospital, the hospital's personnel, or any of the physicians who participated in GCXH's treatment, including Dr. Kato. Additionally, plaintiff Gonzalez's deposition testimony and her affidavit established that she believed that all individuals involved in the CT scan at issue, including the radiologist (i.e., Dr. Kato), were hospital employees and that nobody at the hospital indicated otherwise. This evidence was sufficient "to create a question of fact as to ostensible agency." *Id*. at ___; slip op at 3 (quotation marks and citation omitted).

Defendant, for its part, did not set forth facts establishing as a matter of law that it dispelled plaintiffs' reasonable belief that Dr. Kato was its agent. Although defendant emphasizes that Dr. Kato was "randomly assigned [to GCXH's case] by StatRad"—the company for which Dr. Kato worked and with which defendant had contracted for remote radiology services—defendant does not put forth any evidence demonstrating that plaintiffs were made aware of this arrangement with StatRad at the time of GCXH's treatment. Indeed, "the mere existence of the agreement does not, as a matter of law, rebut plaintiff[s'] reasonable belief" that Dr. Kato was defendant's agent, or dispel plaintiffs' reliance on that belief when GCXH received medical radiology services from Dr. Kato in the course of his care with defendant. *Id*. at ___; slip op at 4.

In arguing otherwise, defendant stresses that ostensible agency requires proof that "[t]he person *dealing with* the agent must do so with belief in the agent's authority and this belief must be a reasonable one[.]" *Markel II*, 510 Mich at 1071 (quotation marks and citation omitted; emphasis added). According to defendant, this means that, in order to form *any* belief regarding Dr. Kato's ties to defendant, let alone a reasonable one, plaintiffs "must have actually *dealt with*"—that is, had "some personal interaction" with—Dr. Kato, but Dr. Kato was undisputedly operating off site and plaintiff Gonzalez admitted that she never met or interacted with Dr. Kato during GCXH's treatment.

While defendant points to cases, including *Markel* and *Grewe*, in which the patient and doctor at issue had direct, personal interactions, defendant provides—and we have found—no binding caselaw *requiring* that a physician must be on site or have "some personal interaction" with the patient to be a hospital's ostensible agent. To the contrary, *Markel II*, *id*., made clear that, under circumstances such as those here, the only thing necessary to give rise to a reasonable belief of agency is that "a patient presents for treatment at a hospital emergency room and is treated during their hospital stay by a doctor with whom they have no prior relationship[.]" And *Markel IV*, ___ Mich at ___; slip op at 1-4, reiterated that standard and found it satisfied simply on the basis that the "[p]laintiff presented for treatment at the hospital emergency room and was treated at the hospital by a doctor with whom she had no prior relationship." In both *Grewe* and *Markel*, the alleged agents were treating physicians with whom the patients at issue directly interacted, and so it is unsurprising that the rulings would speak in those terms at times. But we do not find anything in those rulings that purports to strictly limit, as a matter of law, the doctors who may be

ostensible agents of the hospital to only those who directly and personally interact with the patient.[7] Here, plaintiffs presented for treatment at defendant's emergency department, and Dr. Kato was among the doctors who participated in the provision of care that GCXH received there. This is sufficient under controlling law to create, at minimum, a genuine factual dispute regarding Dr. Kato's status as defendant's ostensible agent. See *id*. at ___; slip op at 1-2, 4; *Markel II*, 510 Mich at 1071.

Defendant maintains that any such belief could not have been reasonable, or was at least dispelled, because Dr. Slater provided plaintiff Gonzalez a business card when introducing himself that indicated he worked for a different entity (nonparty "Indigo")—thereby putting plaintiffs on notice that not every person involved in GCXH's treatment worked for defendant. As defendant notes, plaintiff Gonzalez acknowledged in her deposition that Dr. Slater handed her a business card with his name and "Indigo" on it. She also, however, indicated that it was not her understanding at the time of GCXH's treatment that Dr. Slater was employed by Indigo rather than defendant, testifying that she "didn't really know what it was at the time" and that she "just kn[e]w that he was the on-call pediatrician." Regardless, this evidence may certainly bear on whether Dr. Slater was himself defendant's ostensible agent. But we fail to see how it necessarily establishes, as a matter of law, that plaintiffs "w[ere] advised and understood" that Dr. Kato—or any other medical personnel involved in GCXH's treatment while with defendant—also did not work for defendant, or that it would be unreasonable for them to have believed otherwise. *Markel IV*, ___ Mich at ___; slip op at 3 (quotation marks and citation omitted).

Defendant also asks this Court, as it asked the trial court below, to disregard as evidence the affidavit of plaintiff Gonzalez that plaintiffs filed in response to defendant's motion for partial summary disposition, claiming that it contradicts her deposition testimony. Defendant is correct that a party "may not manufacture a question of material fact by directly contradicting [his or her] own deposition testimony with an affidavit." *Bakeman v Citizens Ins Co of the Midwest*, 344 Mich App 66, 76-77; 998 NW2d 743 (2022). But defendant does not identify, and we do not find, any such direct conflict between plaintiff Gonzalez's deposition testimony and her affidavit. Plaintiff Gonzalez's affidavit merely included additional information regarding her belief that all imaging-related services were provided by hospital personnel and that she was never informed otherwise.

---

[7] Similarly, defendant stresses that *Markel IV* quoted approvingly the following language from the dissenting opinion that accompanied the ruling of this Court that *Markel IV* was reversing:

> when a person enters a hospital through the emergency room and is assigned an attending physician by the hospital, those actions alone are sufficient to create reliance by the patient and to create a question of fact as to ostensible agency unless it is shown that the patient was advised and understood that the physician was not the hospital's agent. [*Markel IV*, ___ Mich at ___; slip op at 3 (quotation marks and citation omitted).]

Defendant suggests that this language's reference to "an attending physician" should be read as a limitation on the doctrine of ostensible agency. We find nothing in the *Markel* rulings or their underlying rationale, however, to support that reading.

She was not asked such questions at her deposition. And in any event, even if the affidavit is not considered, the outcome remains the same; for the reasons discussed, plaintiff Gonzalez's deposition testimony, along with the remainder of the proffered evidence, was sufficient under controlling caselaw to establish a genuine issue of material fact regarding ostensible agency.[8]

Finally, while the trial court's focus in granting summary disposition to defendant was on the first, "reasonable belief" element of the ostensible-agency test, defendant also urges affirmance on the basis of that test's second element,[9] arguing that plaintiffs cannot show their belief was "generated by some act or neglect of the principal sought to be charged[.]" *Grewe*, 404 Mich at 253 (quotation marks and citations omitted). Many of defendant's arguments to this effect overlap with those already discussed, and they fail for the same reasons. Defendant stresses that "[l]eaving aside that [GCXH] arrived through the hospital's emergency department, [defendant] committed no other act or neglect that caused a belief in agency." But *Markel II* and *Markel IV* make clear that GCXH's presentation to defendant's emergency department for treatment cannot be left aside in this inquiry, and is instead central to it: "the 'act or neglect' of the hospital is operating an emergency room staffed with doctors with whom the patient, presenting themselves for treatment, has no prior relationship." *Markel IV*, ___ Mich at ___; slip op at 1-2, quoting *Markel II*, 510 Mich at 1071-1072 (quotation marks and citation omitted). Defendant is not entitled to summary disposition on this basis, either.

---

[8] As noted, the trial court's award of summary disposition to defendant was driven by the direction it gleaned from two unpublished opinions from this Court: *Blaszkiewicz v St Mary's of Mich*, unpublished per curiam opinion of the Court of Appeals, issued June 20, 2024 (Docket No. 363311), and *In re Bean Estate*, unpublished per curiam opinion of the Court of Appeals, issued July 22, 2021 (Docket No. 353960). Both decisions are, of course, nonbinding. See MCR 7.215(C)(1). And in any event, we do not find either provides persuasive support for defendant's position. *Bean* predated both of our Supreme Court's decisions in *Markel* and so does not account for that controlling precedent. *Blaszkiewicz* predated *Markel IV* but accounted for *Markel II*, and we find it is, if anything, helpful to plaintiffs. As is relevant here, *Blaszkiewicz*, unpub op at 2, 7, involved claims of ostensible agency as to two doctors, each of whom participated in treatment of the patient at issue—one at the facility where the patient first presented (Standish), and the other at the facility to which she was eventually transferred (St. Mary's). And each doctor was employed by an entity other than the hospital where they respectively participated in that treatment. *Id*. at 2. At issue was, in relevant part, whether the doctors were ostensible agents of St. Mary's. *Id*. at 2, 5-7. As to the doctor who participated in the patient's treatment while at St. Mary's, the panel found a genuine issue of material fact—even though the "plaintiffs [were] on notice that *some* physicians present at the hospital were not agents of the hospital." *Id*. at 6-7. As to the other doctor, the panel found no genuine factual dispute as to his agency status with St. Mary's because he only participated in the patient's treatment at Standish, and there was no evidence that plaintiffs believed Standish personnel were agents of St. Mary's. *Id*. at 7. But the panel also found that the trial court should have permitted amendment of the complaint to add Standish as a defendant, so that the plaintiffs could pursue an ostensible-agency claim against it. *Id*. at 7-9.

[9] Defendant has made no argument, below or on appeal, that summary disposition is warranted on the basis of the test's third element.

In sum, when viewing the evidence in the light most favorable to plaintiffs, there was a genuine issue of material fact regarding Dr. Kato's status as defendant's ostensible agent at the time of GCXH's treatment. See *Cantina Enterprises*, 349 Mich App at 689-690; see also *Markel IV*, ___ Mich at ___; slip op at 1-2, 4; *Markel II*, 510 Mich at 1071-1072. Accordingly, the trial court erred by granting summary disposition to defendant on plaintiffs' vicarious liability claim regarding Dr. Kato.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Philip P. Mariani
/s/ Christopher M. Murray
/s/ Sima G. Patel